## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF OKLAHOMA

COURTNEY R. HANSON,         )
                             )
             **Plaintiff,**      )
v.                          )     **Case No. CIV-20-77-SPS**
                             )
KILOLO KIJAKAZI,          )
**Acting Commissioner of the Social**  )
**Security Administration,**[1]       )
                             )
            **Defendant.**     )

## OPINION AND ORDER

The claimant Courtney R. Hanson requests judicial review pursuant to 42 U.S.C. § 405(g) of the decision of the Commissioner of the Social Security Administration denying her application for benefits under the Social Security Act. She appeals the decision of the Commissioner and asserts that the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons discussed below, the Commissioner's decision is hereby AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if h[er] physical or mental impairment or impairments are of such severity that

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

[s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A).  Social security regulations implement a five-step sequential process to evaluate a disability claim.  *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g).  This Court's review is limited to two inquiries:  (1) whether the decision was supported by substantial evidence, and (2) whether the correct legal standards were applied.  *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997) [citation omitted].  The term "substantial evidence" requires "'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (*quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).  However, the Court may not reweigh the evidence nor substitute its discretion for that of the agency.  *See Casias v. Secretary of Health & Human*

---

[2] Step one requires the claimant to establish that she is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910.  Step two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities.  *Id*. §§ 404.1521, 416.921.  If the claimant is engaged in substantial gainful activity, or if her impairment is not medically severe, disability benefits are denied.  At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. pt. 404, subpt. P, app. 1.  If the claimant suffers from a listed impairment (or impairments "medically equivalent" to one), she is determined to be disabled without further inquiry.  Otherwise, the evaluation proceeds to step four, where the claimant must establish that she lacks the residual functional capacity (RFC) to return to her past relevant work.  The burden then shifts to the Commissioner to establish at step five that there is work existing in significant numbers in the national economy that the claimant can perform, taking into account her age, education, work experience, and RFC.  Disability benefits are denied if the Commissioner shows that the claimant's impairment does not preclude alternative work.  *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Services*, 933 F.2d 799, 800 (10th Cir. 1991).  Nevertheless, the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951).  *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was thirty years old at the time of the administrative hearing (Tr. 70). She completed high school and has previously worked as a nurse's aide and a developmentally disabled direct care aide (Tr. 30, 88, 224).  The claimant alleges she has been unable to work since July 14, 2017, due to congestive heart failure (Tr. 223).

### Procedural History

The claimant applied for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85, on July 31, 2017.  Her application was denied.  ALJ B.D. Crutchfield conducted an administrative hearing and determined that the claimant was not disabled in a written decision dated June 21, 2019 (Tr. 15-33).  The Appeals Council denied review, so the ALJ's decision represents the Commissioner's final decision for purposes of this appeal.  *See* 20 C.F.R. § 416.1481.

### Decision of the Administrative Law Judge

The ALJ made her decision at steps four and five of the sequential evaluation.  She found that the claimant had the residual functional capacity ("RFC") to perform a full range of light work as defined in 20 C.F.R. § 416.967(b), *i. e.*, that she could lift/carry/push/pull twenty pounds occasionally and ten pounds frequently and sit/stand/walk six hours in an eight-hour workday with normal breaks (Tr. 20).  The ALJ thus concluded that the claimant

-3-

could return to both jobs identified in her past relevant work, as she performed them, *i. e.*, at light exertion.  Alternatively, she concluded that there was other work in the national economy that the claimant could perform, *e. g.*, mailroom clerk, laundry sorter, and folder (Tr. 30-31).

## Review

The claimant contends that the ALJ erred by improperly assessing her RFC, which affected the jobs she could perform.  Specifically, she contends the ALJ failed to properly assess additional limitations for her nonsevere mental impairment and nonsevere hand impairment, and further failed to properly evaluate a consultative examiner's opinion.  The Court finds these contentions unpersuasive for the following reasons, and the decision of the Commissioner should therefore be affirmed.

The ALJ determined that the claimant had the severe impairment of congestive heart failure, as well as nonsevere impairments including diabetes mellitus, depression, bipolar and related disorders, high blood pressure, and neuropathy in the hands with trigger left middle and right thumb fingers (Tr. 18). The medical evidence related to the claimant's mental impairments reflects that the claimant reported anxiety to her treating physician at an April 2019 appointment and was prescribed medication, but there is nothing in the record to indicate she took the medication or followed up on this treatment (Tr. 734).

On April 17, 2018, Dr. Brian Snider, Ph.D., conducted a mental status examination of the claimant (Tr. 696-700).  He assessed her with other specified depressive disorder, noting that there were insufficient symptoms for persistent depressive disorder or major depressive disorder (Tr. 700).  He found that the claimant would probably have little

difficulty understanding and carrying out simple instructions and would likely have mild difficulty with complex and detailed instructions; likely have mild difficulty concentrating and persisting through a normal workday; her ability to maintain a normal workday and workweek without interruptions from her psychiatric symptoms was likely mildly impaired; and she would have mild difficulty responding appropriately to coworkers, supervisors, and the public (Tr. 700).

As to her hand impairments, on January 14, 2019, the claimant complained to her treating physician of left long and thumb trigger fingers/right index finger mass, indicating that her fingers had been locking for eight months (Tr. 716). Dr. Theron Nichols, D.O., assessed her with bilateral carpal tunnel syndrome and ordered an EMG study to determine the severity of her compression (Tr. 719). The EMG study revealed bilateral median neuropathy at the wrists, with no other evidence of radiculopathy (Tr. 703). Upon neurological examination, the claimant had 5/5 grip strength, finger extension, and finger abduction bilaterally (Tr. 707). Noting that she had failed splint therapy, Dr. Jay Johnson, D.O., recommended consideration of carpal tunnel release, but deferred the trigger finger and mass on her index finger to her orthopedic surgeon for proper treatment (Tr. 709).

State reviewing physicians determined initially and upon reconsideration that the claimant's mental impairments were nonsevere (Tr. 100, 116). As to her physical impairments, state reviewing physicians determined that she could perform light work with no additional restrictions (Tr. 101-102, 117-119).

In her written opinion at step two, the ALJ had noted the claimant's depression was nonsevere and found either mild or no limitations in the four broad areas of mental

functioning, citing to Dr. Snider's evaluation and the April 2019 notation as to the claimant's anxiety (Tr. 18-19). At step four, the ALJ summarized the claimant's administrative hearing testimony, as well as providing a thorough summary of the medical evidence of record. The ALJ noted at step four the instructions for follow-up treatment as to the claimant's carpal tunnel, but that the claimant reported no upcoming treatment or evaluations as to this impairment when she testified at the administrative hearing. Additionally, the ALJ noted that, by the claimant's own report, she had been fired previously for violating company policy and not because psychiatric symptoms interfered with her employment (Tr. 25). As relevant to this appeal, the ALJ found that the state reviewing physician opinions, *i. e.*, that the claimant's mental impairments were not severe, were persuasive and supported by the evidence in the record including Dr. Snider's consultative examination (Tr. 29). She further found that the state reviewing physician opinions determining the claimant could perform light work were also persuasive and consistent with the evidence in the record (Tr. 29).

The claimant contends that the ALJ erred in assessing her RFC. More specifically, she claims the ALJ failed to consider or account for her mental impairments and her hand/finger impairments, and in evaluating Dr. Snider's opinion. An RFC has been defined as "what an individual can still do despite his or her limitations." Soc. Sec. R. 98-6p, 1996 WL 374184, at *2 (July 2, 1996). It is "an administrative assessment of the extent to which an individual's medically determinable impairment(s), including any related symptoms, such as pain, may cause physical or mental limitations or restrictions that may affect his or her capacity to do work-related physical and mental activities." *Id.* This includes a

discussion of the "nature and extent of" a claimant's physical limitations including "sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping, or crouching)." 20 C.F.R. §§ 404.1545(b), 416.945(b).  Further, this assessment requires the ALJ to make findings on "an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis[,]" and to "describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record."  Soc. Sec. R. 98-6p, 1996 WL 374184, at *1, 7. Here, the ALJ has fulfilled her duty.  The claimant nevertheless asserts that the evidence does not support a finding that she can perform work at the assigned RFC level in light of her nonsevere impairments.

Contrary to claimant's arguments, however, the ALJ discussed all the evidence in the record and her reasons for reaching the RFC.  *Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004)).  First, the evidence reflects no functional limitations for the claimant's hand impairments (indeed, the examining record demonstrates 5/5 grip strength, and 5/5 finger extension and abduction, bilaterally), nor does it suggest necessary limitations related to her mental impairments, and the ALJ clearly considered both by discussing them at several points at step four and noting how *all* of her impairments

-7-

informed her RFC assessment.  Furthermore, the claimant has pointed to no medical documentation providing further limitations; rather, she asserts that mild mental limitations by definition *require* corresponding limitations in the RFC.  Because she points to no evidence other than her own assertions, the Court declines to find an error here.  *Cf. Garcia v. Astrue*, 2012 WL 4754919, at *8 (W.D. Okla. Aug. 29, 2012) ("Plaintiff's mere suggestion that a 'slow' gait might adversely affect his ability to perform the standing and walking requirements of light work is not supported by any authority.").

The Court reaches the same conclusion as to the ALJ's assessment of Dr. Snider's opinion.  For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. § 416.920c.  Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors.  *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b).  The factors are:  (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements.").  20 C.F.R. §§ 404.1520c(c), 416.920c(c).  Supportability and consistency are the most important factors and the ALJ must explain how both factors were considered.  *See* 20

C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2).  Generally, the ALJ is not required to explain how the other factors were considered.  *Id.*  However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered.  20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

The Court finds that the ALJ's treatment of Dr. Snider's opinion was appropriate. She noted his assessment and findings throughout the opinion and specifically relied on his opinion as persuasive and consistent with the state reviewing physician opinions.   Thus, the ALJ's opinion was sufficiently clear for the Court to evaluate it.  *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007) ("The ALJ provided good reasons in his decision for the weight he gave to the treating sources' opinions.  Nothing more was required in this case.").  The Court thus finds that the ALJ properly considered Dr. Snider's opinion, along with all the other opinions in the record and in concert with the medical evidence, in accordance with the proper standards.  The Court finds that when all the evidence is taken into account, the conclusion that the claimant could perform a full range of work with the aforementioned limitations is well supported by substantial evidence.  The Court therefore finds no error in the ALJ's failure to include any additional limitations in the claimant's RFC.  *See, e. g., Best-Willie v. Colvin,* 514 Fed. Appx. 728, 737 (10th Cir. 2013) ("Having reasonably discounted the opinions of Drs. Hall and Charlat, the ALJ did not err in failing to include additional limitations in her RFC assessment.").

Finally, the claimant asserts that she can neither return to her past relevant work identified at step four, nor perform the jobs identified at step five.  Step four has three distinct phases. The ALJ must:  (i) establish the claimant's RFC, then (ii) determine the demands of her past relevant work (both physical and mental), and (iii) ultimately decide if her RFC enables her to meet those demands.  *See, e. g.*, *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  The claimant contends that the ALJ failed to properly account for the demands of her past relevant work at phase two, and thus her conclusion that she could perform her past relevant work was not properly supported by evidence.

With regard to phase two, the Court finds the ALJ's questioning of the claimant at the administrative hearing and the VE's testimony about the exertional and skill levels of the jobs was sufficient to establish the demands of her past work (Tr. 88-89). *See, e. g.*, *Westbrook v. Massanari*, 26 Fed. Appx. 897, 903 (10th Cir. 2002) (finding that remand under *Winfrey* is appropriate only when the record is "devoid of even any mention of the demands of past relevant work[.]") [citation omitted] [unpublished opinion].  Further, the ALJ made her own phase-three findings that the claimant's RFC did not preclude her performance of past work a nurse's aide and developmentally disabled care aide as she performed it (Tr. 15).  Although the ALJ clearly relied on the VE's testimony for her phase-three findings, *see Doyal v. Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) ("An 'ALJ may rely on information supplied by the VE at step four.'") (*quoting Winfrey*, 92 F.3d at 1025), she did not "delegate the analysis to the [VE]." *Id.* ("The ALJ did not delegate the analysis to the vocational expert; instead, he quoted the VE's testimony approvingly, in support of

his own findings at phases two and three of the analysis."). Thus, the ALJ's analysis of the claimant's past relevant work satisfied the requirements set forth in *Winfrey*.

Moreover, the Court finds that substantial evidence supports the ALJ's determination that the claimant can perform the full range of light work; accordingly, the claimant's contention that she cannot perform the jobs alternatively identified at step five is unavailing. In essence, the claimant asks the Court to reweigh the evidence in her favor, which the Court cannot do. *See Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000) ("In conducting our review, we may neither reweigh the evidence nor substitute our judgment for that of the Commissioner.") (*citing Casias*, 933 F.3d at 800).

The ALJ specifically noted every medical record available in this case, gave reasons for her RFC determination and ultimately found that the claimant was not disabled. *See Hill*, 289 Fed. Appx. at 293 ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'") (*quoting Howard*, 379 F.3d at 949). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."). (citations omitted). Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

In summary, the Court finds that correct legal standards were applied by the ALJ, and the decision of the Commissioner is therefore supported by substantial evidence.  The decision of the Commissioner of the Social Security Administration is accordingly hereby AFFIRMED.

**DATED** this 22nd day of September, 2021.

**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**